76852. CAMARATA v. THE STATE.
(371 SE2d 885)

DEEN, Presiding Judge.

Appellant Camarata was observed operating a vehicle in an erratic manner. He was arrested and agreed to have his blood and urine tested for the presence of alcohol or other drugs. The results showed: "The blood is positive for ethyl alcohol 0.06 grams%"; "Immunoassay

techniques indicate the presence of tetra-hydrocannabinol [mari-juana] and/or metabolites in the blood specimen"; and "Immunoassay techniques indicate the presence of tetra-hydrocannabinol and/or metabolites in the urine specimen." Camarata was accused in separate counts of driving under the influence of alcohol, driving under the influence of drugs, and driving under the influence of alcohol and drugs.

Appellant filed a discovery motion and was given copies of the laboratory reports. He then filed a motion *in limine* seeking to prevent the State's witness from testifying on matters not expressly included in the reports. The motion was based on the grounds that, since the testimony was essential to an understanding of the data in the reports, this testimony should be considered a part of the reports; and, since the exact contents of the expected testimony were not provided to defense counsel ten days before trial, this constituted a violation of OCGA § 17-7-211 which should render the testimony inadmissible. The motion was denied.

At trial the forensic toxicologist who had analyzed Camarata's blood and urine testified that he had employed certain analytical methods approved by the State Crime Laboratory and that the tests had been performed in such a manner as to ensure the accuracy of the results. He further testified that the results were quantified in terms of nanograms (a unit of measurement representing one billionth of a gram) and that, on the basis of experience, a scale had been devised running from 0 to 250 nanograms, each point on the scale representing the degree of effect of a given drug on the human function. In further testimony the witness stated that the reading on Camarata had exceeded 250, and that, in combination, either two or more drugs, or alcohol and one or more drugs, exhibit a cumulative effect which could be functionally disabling even if one of the ingredients alone were not present in sufficient quantity to result in impairment. The defendant was found guilty of driving under the influence of alcohol and drugs. On appeal Camarata enumerates as error the denial of his motion to suppress the expert testimony. *Held*:

1. In *Durden v. State*, 187 Ga. App. 154, 158 (369 SE2d 764) (1988), a case factually similar to the instant case, this court held that the omission of the actual figures (i.e., the number of nanograms of the controlled substance found per milliliter of the defendant's blood, urine, or other body fluid) from the forensic laboratory reports supplied to the defense by the State rendered the report in noncompliance with OCGA § 17-7-211. This noncompliance, we held, constituted reversible error because "the scientific evidence which was denied to the defense, in fact comprised the entire substance of the State's case." *Durden*, supra at 158.

In *Box v. State*, 187 Ga. App. 260 (370 SE2d 28) (1988), this

court found, in factual circumstances closely similar both to *Durden* and to the instant case, that the omission of the actual figures was fatal to the prosecution's case. On the authority of *Durden* and *Box*, therefore, we must reverse the judgment in the case *sub judice*.

2. We note with concern the problem common to the instant case and those cases cited in Division 1, supra; namely, that the "results" printed on the forensic laboratory's report have independent significance to an expert but not to the laity, leaving the latter dependent on the expert's testimony at trial for a meaningful interpretation of the results. The forensic expert, through experience, immediately recognizes that a report which indicates "presence" of a controlled substance in the body fluids of the accused means "presence in a quantity sufficient to have a significant effect" and denotes, to the expert, a range of nanograms per milliliter which indicates impairment of a person's ability to drive. As the State points out in its brief, the legislature has by statute created certain inferences in association with certain levels of alcohol in the blood. OCGA § 40-6-392. If similar legislation existed regarding tests for controlled substances, the latter would provide the same certainty as do the tests for alcohol content.

*Judgment reversed. Carley and Sognier, JJ., concur.*

DECIDED JULY 6, 1988 —
REHEARING DENIED JULY 26, 1988

*Donald L. Hudson, Jr., David H. Jones*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, H. Jackson Cotney, Jr., Gary D. Bergman, Assistant Solicitors*, for appellee.